

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# Fang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Fang v. Atty Gen USA" (2004). *2004 Decisions.* Paper 158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-2486

———

MENG RONG FANG,

<u>Appellant</u>

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES;
BUREAU OF IMMIGRATION AND CUSTOM ENFORCEMENT

———

On Petition for Review from the Board of Immigration Appeals

Agency No. A77-775-268

———

Submitted Under Third Circuit LAR 34.1(a): October 1, 2004

Before: ROTH and CHERTOFF, *Circuit Judges,* and IRENAS,* *Senior District Judge.*

(Filed  November 1, 2004)

———

OPINION

———

———

* Honorable Joseph E. Irenas, Senior United States District Judge for the District
of New Jersey, sitting by designation.

CHERTOFF, *Circuit Judge.*

Appellant Meng Rong Fang ("Meng Rong") challenges the order of the Board of Immigration Appeals affirming without opinion the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. We will remand to the Board with directions to consider the appeal on the merits.

Meng Rong was apprehended by the United States Coast Guard while being smuggled to Guam. He demonstrated a credible fear of persecution during his interview in Honolulu, Hawaii. He was later served with a Notice to Appear charging that he was subject to removal as an alien without a valid entry document.

Meng Rong applied for asylum, withholding of removal, and relief under the Convention Against Torture on the ground that he had been subject to past persecution and feared future persecution on account of his opposition to, and violation of, China's coercive population control laws. At his asylum hearing, Meng Rong testified as follows: After he and his wife had their first child, his wife was required to obtain an intrauterine device (IUD) to prevent further pregnancies. Later, she had a private physician remove the IUD, and Meng Rong's wife became pregnant with their second child. When the "illegal" pregnancy was discovered by authorities, they demanded an exorbitant fine to avert a forced abortion and sterilization. Meng Rong paid the fine, but a few days later, additional officials arrived and demanded a second payment. During

the course of an argument between Meng Rong and the officials, Meng Rong's cousin assaulted and fatally wounded one of the officials. Members of the family then fled.

The Immigration Judge ("IJ") found Meng Rong's testimony credible, but determined that it did not suffice as a matter of law to satisfy the requirements of asylum. The IJ correctly noted that under the current definition, past persecution is established if someone has been compelled to undergo an abortion or sterilization, or has been persecuted for refusing to undergo those procedures, "or for other resistance to a coercive population control program." 8 U.S.C. §1101(a)(42). Here, there was no abortion or sterilization. What remained was the question whether an excessive and punitive fine levied as punishment for an unauthorized pregnancy constituted persecution for "other resistance to a coercive population control program", under the so-called "elastic clause" of the asylum statute. Acknowledging that this question was one of first impression for the BIA, the IJ concluded that monetary punishment for an unauthorized pregnancy did not rise to the level of persecution required by the elastic clause. The IJ also implicitly rejected the forced implantation of the IUD as a sufficient basis to establish past persecution under the elastic clause.[1]

Under its summary "streamlining" procedure, the BIA affirmed the IJ decision by order of a single appellate judge.

---

[1] The Immigration Judge also rejected the claim that respondent could invoke asylum on the ground that he might be persecuted because of his cousin's murder of a government official. Because of our disposition of this appeal, we do not address this issue.

On this appeal, Meng Rong challenges the decision of the immigration authorities on the merits, but also urges that the Board violated its own regulations by employing a summary affirmance procedure in the face of the novel legal issues posed by this asylum application. The government argues that this court has no jurisdiction to review the streamlining decision of the BIA, since that is a pure matter of executive discretion, and, in any event, that the discretion was reasonably exercised here. We disagree.

The validity of the streamlining procedure was upheld by this court in <u>Dia v. Ashcroft</u>, 353 F.3d 228 (3d Cir. 2003)(en banc). More recently, we addressed the government's contention that the decision to streamline is a matter of unreviewable agency discretion in <u>Smriko v. Ashcroft</u>, __ F.3d __, 2004 WL 2381946, at *12 (3d Cir. Oct. 26, 2004). We rejected the notion that the streamlining decision is beyond review, observing that the regulations set forth discernable standards for making that decision. 8 C.F.R. § 3.1(e)(4)(i)(A)-(B) (now § 1003.1(e)(4)(i)(A)-(B)).

That brings us to the government's second claim: That streamlining is appropriate under the regulations because "'the issues on appeal are squarely controlled by existing Board or federal court precedent' . . . or the 'factual and legal questions raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.'" (Appellee Br. 29). We have difficulty accepting this contention under either of the two theories that Meng Rong has advanced. As to the theory that punitive fines for an unlawful birth could constitute persecution under the elastic clause, the IJ himself stated: "That issue would be one of first impression for the Board of Immigration

Appeals, since the Board has not issued a precedent [sic] decision in terms of any allegation that a fine alone would be sufficient to constitute persectuion in a family planning context." (App. 77) As to the forced implantation of the IUD, the government concedes before this court that the "Board and the Circuit Courts have not specifically addressed whether a woman who unwillingly acquiesced to obtaining an IUD 'has been persecuted. . .'" under the elastic clause. (Government Br. 17). In light of these two admissions, we are frankly baffled at how the government can seriously urge that the issues on appeal before the BIA were "squarely controlled by existing Board or federal court precedent" or are insubstantial. 8 C.F.R. § 3.1(e)(4)(i)(A)-(B).

Occasions on which we remand to the BIA for an abuse of its streamlining decision ought to be few and far between. But if there is ever a case in which that streamlining decision was an abuse of discretion, this is it.

We will remand the case to the BIA to address it on the merits. We intimate no view as to what the correct resolution of these legal issues should be, but will address them in the future, if necessary, with the benefit of the Board's considered views.